The Campbell Banking Company, Appellant, v. John A. Worman.

**Construction of Guaranty.** Defendant became indebted to plaintiff, a banker, in about fourteen thousand dollars, and gave a mortgage to secure it. A few days later, the parties, and a brother of defendant met to further arrange for said debt, and the following writings were executed in the order herein set out: "I hereby authorize (defendant) to use my name as security on all loans you *may make him*, up to and including $3,000. J. A. Worman." Then the brother made another writing directed to and signed by plaintiff, as follows: "I hereby agree to allow (defendant) to use my name as security to your bank for $6,000, upon these conditions: The mortgage which he gave you shall not be made public or recorded; also, *that he shall have the same credit at your bank, and may have (as previously)* should he so desire, from one to three years in which to pay *said* amount, from time to time, as this amount —— is paid you —— I am to receive receipts and same reduced in amount of my guaranty. You will also advise me how (defendants) affairs stand in your judgment, should sale of half interest in property take place and (defendant) apply money to the extent of $7,000 of his obligation here —— my obligation to you shall cease and you will also release said mortgage to him "

At the same time and as a part of the same transaction, defendant made to plaintiff a note on account of said debt, and defendant and his brother made a second note for the balance, six thousand

dollars, whereupon the note originally given was canceled. The said six thousand dollar note was paid. Defendant continued to do business with the bank, and becoming indebted to it subsequently, made it the note in suit. It was for the balance due on said subsequent debt, and defendant signed his brother's name to it. *Held*:

  a.  Though the first writing undertakes to guarranty all loans which defendant *may make*, when all writings and attendant circumstances are considered, there was a guarranty of the existing six thousand dollar note, alone.

  b.  While it was not necessary to confer authority on defendant with reference to the six thousand dollar note in view of the fact that it was signed· then and there, it will be noticed that defendant was to have time in which to pay same, and that it might be necessary to renew it. Also, that it would be convenient to authorize him to renew it because the brother was a non-resident.

*Appeal from Appanoose District Court.*—HON. ROBERT SLOAN, Judge.

WEDNESDAY, OCTOBER 28, 1896.

ACTION at law to recover judgment upon a promissory note dated November 7, 1890, for three thousand, five hundred and fifty-three dollars and forty-two cents, payable ninety days after date to the plaintiff, and purporting to be signed by C. W. Worman, Mrs. C. W. Worman, and J. A. Worman. C. W. Worman and Mrs. C. W. Worman failed to appear, and default was entered against them. John A. Worman appeared and answered under oath, denying that he ever signed the note sued on, or authorized anybody to sign the same for him, and that the signature, "J. A. Worman," signed to said note, is not his genuine signature, and was not made or signed by him. He also filed a counter-claim, to which plaintiff replied, joining issue thereon. At the conclusion of the evidence on behalf of both parties, the court sustained defendant's motion for a verdict on plaintiff's cause of action, and thereupon the plaintiff moved for

a verdict on the counter-claim. The court instructed as follows: "You are instructed to return a verdict for defendant on the plaintiff's cause of action on the note, and you are also instructed to return a verdict for the plaintiff on the defendant's counter-claim." Judgment was entered accordingly, from which plaintiff appeals.—*Affirmed.*

*Vermilion & Valentine* and *Baker & Moore* for appellant.

*Porter & Porter* and *Mabry & Payne* for appellee.

GIVEN, J.—I. The case before us is upon the issue joined on plaintiff's cause of action. It is not claimed that the name "J. A. Worman" was signed to that note by this defendant. It is conceded that it was written by his brother, the defendant C. W. Worman, and the contention is whether C. W. Worman had authority to so sign the same. For some years prior to November, 1890, C. W. Worman was engaged at Centerville, Iowa, in buying and shipping poultry, and while so engaged transacted his banking business with the plaintiff. C. W. Worman became indebted to the plaintiff in the sum of thirteen thousand, four hundred and twenty-nine dollars and forty-five cents, evidenced by his two promissory notes. On September 7, 1889, he executed on account of this indebtedness a note for fourteen thousand dollars, payable to plaintiff, and a mortgage on real estate to secure it, which he left with Clark & Peatman. On the eleventh day of September, 1889, the parties met for the purpose of making some further arrangement as to the said indebtedness, and their negotiations resulted in the execution of writings as follows:

Exhibit B: "Centerville, Iowa, Sept. 11, 1889. To the Campbell Banking Co.—Gentlemen: I hereby authorize Mr. C. W. Worman to use my name as surety on all loans you may make him, up to and including six thousand dollars. J. A. Worman."

Exhibit C: "Centerville, Iowa, Sept. 11, 1889. To the Campbell Banking Co., Centerville, Iowa—Gentlemen: I hereby agree to allow my brother, C. W. Worman, to use my name as security to your bank for $6,000 dollars upon these conditions: He having handed you a mortgage for fourteen thousand dollars ($14,000.00), Sept. 7th, covering his homestead (and two other pieces of property), specified in deed,—that this deed or paper be not placed upon record or made public without the consent of both C. W. Worman and myself. Also, that he shall have same credit at your bank and may have (as previously), should he so desire, from one to three years in which to pay said amount, from time to time as this amount —— is paid you —— I am to receive receipts and same reduced in amount of my guarantee. You are also to advise me how C. W. Worman affairs stands, in your judgment. Should sale of $\frac{1}{2}$ int. in property take place, and C. W. Worman apply money to extent of $7,500.00 to his obligation here, my obligation to you shall cease, and you will also release said mortgage to him. D. C. Campbell."

At the same time, and as a part of the same transaction, C. W. Worman and wife executed to plaintiff, on account of said indebtedness, their note for seven thousand four hundred and twenty-nine dollars and forty-five cents. and C. W. Worman and J. A. Worman executed to plaintiff their note for the balance of said indebtedness, namely, six thousand dollars; whereupon said two former promissory notes, evidencing said indebtedness, were canceled. At the maturity of said six thousand dollars, C. W. Worman executed a note in renewal thereof, signing his own and J. A. Worman's

name thereto. He also paid interest on said six thousand dollars indebtedness. Subsequently, J. A. Worman paid a part of said six thousand dollars indebtedness, and gave his own individual note for the balance, which he afterwards paid to plaintiff in full. C. W. Worman continued in business after September 11, 1889, and transacted his banking with the plaintiff, and on November 7, 1890, executed to plaintiff the note sued upon for the balance then due to plaintiff, and signed the name, "J. A. Worman," thereto. During all this time, J. A. Worman resided at Minneapolis, and had no notice of the accumulation of said last indebtedness, nor of the giving of the note sued upon, until served with the original notice in this case.

II.   The controlling issue is whether, under the authority given in Exhibit B, C. W. Worman had the right to sign the name of J. A. Worman as security to plaintiff for further indebtedness, or, in other words, to the note in suit, which was given to evidence a further indebtedness. Plaintiff contends, that the authority therein given relates to any subsequent indebtedness that C. W. Worman might incur to plaintiff, not exceeding six thousand dollars, and defendant contends, that it relates only to the six thousand dollars of the then existing indebtedness, for which he became liable. Defendant contends, that it is a guaranty, confined to that single credit, or transaction, while plaintiff contends that it is a continuing guaranty, limited as to amount, but indefinite as to time. Numerous authorities are cited as to when a guaranty is limited to a single transaction, and when it is an open and continuing guaranty, but as there is no contention as to the law upon this subject, the authorities need not be noticed. The question before us is simply as to the proper construction to be given to Exhibits B and C, in the light of the attending circumstances. These two exhibits, and the two

promissory notes, executed September 11, 1889, were, we think, manifestly parts of one transaction, and must, therefore, be construed together. Plaintiff insists, that, because of the order in which they were executed, they are independent transactions; that Exhibit B stands alone, and, so taken, confers authority on C. W. Worman to use the name of his brother as security to the plaintiff for all loans thereafter made, not exceeding six thousand dollars. While it may be, that the one first executed may have been made without contemplating the others, it is entirely clear that the others were made in view of it, in relation to the same subject-matter, and at the same time, and thereby each became a part of the same transaction. Whatever other arrangement may have been contemplated, there is no doubt but that, ultimately, Exhibit B was to be left with the plaintiff, and Exhibit C, with the defendant, J. A. Worman, that each might have this evidence of the one transaction. It might be said, that Exhibit B, taken alone, shows authority to C. W. Worman to use the name of his brother as security to plaintiff for "all loans you may make him, up to and including six thousand dollars:" but, considered in connection with Exhibit C, and attending circumstances, we think a different intention appears. Exhibit C expresses the same authority, upon the same condition as to amount, and the further condition, that the mortgage from C. W. Worman to plaintiff should not be placed on record or made public, without the consent of both C. W. Worman and J. A. Worman. The mortgage referred to, it will be remembered, stood as security for the existing indebtedness. Appellant relies largely upon the provision that C. W. Worman "shall have same credit at your bank, and may have (as previously), should he so desire, from one to three years in which to pay said amount." It is insisted that this can only relate to

future indebtedness, but it will be observed that the
credit to be given is of one to three years in which to
pay said amount,—not a further amount, but the
amount of the indebtedness already existing. The
provision that J. A. Worman is to receive receipts of
payments made from time to time, and that the pay-
ments shall reduce the amount of his guaranty, is to
the end that he may have the evidence of the pay-
ments, and thereby know the extent to which his
guaranty was reduced. As matters stood when these
instruments were executed, C. W. Worman was the
principal debtor for the entire amount, and it was his
duty to pay the same. J. A. Worman, having become
liable for a part thereof, namely, six thousand dollars,
was interested in knowing how payments might be
applied; and hence the provision that payments
should reduce the amount of his guaranty, and that if
seven thousand five hundred dollars, that might be
derived from a sale of property, should be applied on
the indebtedness, the obligation of J. A. Worman
should cease, and the mortgage should be released.
Surely these provisions cannot relate to other than
the existing indebtedness. While it is true that the
language of these exhibits, and especially of Exhibit
C, is somewhat ambiguous, yet, read together in the
light of attending circumstances, we think it clear
that the intention of the parties was that the guaranty
of J. A. Worman was not as to future indebtedness,
but as to the six thousand dollars of the exist-
ing indebtedness. It is true that J. A. Worman
then, and as a part of the transaction, signed
the six thousand dollar note, and that it was unneces-
sary to confer authority upon his brother with refer-
ence thereto; but it will be noticed that the brother
was to have from one to three years in which to pay
said amount, and to avail himself of this credit it
would be necessary to renew the six thousand dollar

note at its maturity. J. A. Worman resided at a distance, and hence the necessity of conferring upon C. W. Worman the authority to use his name.

It is argued on behalf of defendant that if this was a continuing guaranty the plaintiff is not entitled to recover, for the reason that he did not notify defendant of advances made under the guaranty. In the view we take of the case, ·it is unnecessary that we consider this claim of the defendant.

Our conclusion is that the guaranty was as to six thousand dollars of the existing indebtedness, that the authority given to C. W. Worman to use the name of J. A. Worman as security to the plaintiff was as to said six thousand dollars, and that, the note in suit being given for another and different indebtedness, C. W. Worman had no authority to sign the name of J. A. Worman thereto. Entertaining these views, we think the court properly sustained the defendant's motion for a verdict on plaintiff's cause of action. The defendant not having appealed, we are not called upon to consider the action of the court in directing the verdict for the plaintiff on the defendant's counter-claim. For the reasons stated the judgment of the district court is AFFIRMED.